IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

*FILED*

*FEB 6 2001*

DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
DEP. CLERK

| | |
|---|---|
| EMBREX, INC. ) | |
| ) | Civil Action No. 5:96-CV-824-BR(3) |
| Plaintiff, ) | |
| ) | |
| v. ) | **EMBREX'S RESPONSE TO MOTION** |
| ) | **BY EDWARD G. BOUNDS, JR. TO** |
| SERVICE ENGINEERING CORP. ) | **STRIKE AWARD OF ATTORNEYS** |
| AND EDWARD G. BOUNDS, JR. ) | **FEES AND TO ASSESS ROYALTY** |
| ) | **PAYMENTS** |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

Embrex, Inc. ("Embrex") submits this brief in response to the letter from Edward G.

Bounds, Jr. ("Bounds") to Senior United States District Court Judge W. Earl Britt dated January

20, 2001. Via that letter, Bounds requests that this Court cancel the September 28, 1998 and

November 10, 1998 judgments of this Court for almost $1,400,000 in attorney fees, which this

Court awarded Embrex based on defendants' willful infringement of U.S. Patent No. 4,458,630

("the '630 patent") and defendants' bad faith breach of a prior Settlement Agreement. Bounds

further requests that this Court forego the remand for a jury determination of Embrex's

reasonable royalty damages ordered by the United States Court of Appeals for the Federal

Circuit ("Federal Circuit"), suggesting instead that the reasonable royalty should be set in the

amount of eighty-four cents. Bounds only purported basis for requesting this relief is his claim

that both he and his company have no money to either pay for counsel or to satisfy the judgment.

However, as Bounds' current purported financial condition is irrelevant to both the reasonable

royalty determination and Bounds' responsibility for Embrex's attorneys fees, Bounds' "requests"

for relief should be denied.

## II.  ARGUMENT

### A.  Bounds' "Motion" Should be Denied as Procedurally Defective

As an initial matter, Bounds did not serve or otherwise provide Embrex with a copy of the January 20, 2001 letter. Embrex received its copy from the Court with an indication that Embrex should respond as if the letter were a motion. Bounds' *ex parte* request for relief complies with neither the Federal Rules of Civil Procedure or the rules of this Court.[1] *See* Fed. R. Civ. P. 5; Local Rule 3.07. Bounds' request to this Court also was not made in the form of a proper motion, and thus further violates Local Rules 3.06, 4.02 and 4.04. Moreover, Bounds' has failed to identify the legal basis which would purportedly support the relief he is seeking, as is required by Local Rule 3.06(e). Thus, as there is not a proper motion before this Court as to which Embrex can respond, Bounds' "request" for relief should be denied.

### B.  Embrex's Judgment for Attorneys Fees Should Stand

As noted above, Bounds first requests that this Court revoke its judgments awarding Embrex its attorneys fees in this matter. This Court awarded those attorneys fees based on a jury finding that Bounds willfully infringed the '630 patent and breached his prior Settlement Agreement with Embrex in bad faith. The Federal Circuit affirmed the award of attorneys fees on **two** independent grounds. Aside from a self-serving, unsupported and factually inaccurate assertion that Embrex allegedly presented "no evidence [of infringement] at the July 1998 trial",[2] Bounds' request that this Court "drop" the award of attorneys fees is based solely on Bounds' unsupported representation that he now has no money. Bounds' current alleged financial

---

[1] While Bounds technically is not represented by counsel in the present remand proceedings, Bounds is represented by a Maryland law firm in Embrex's collection action, and receives assistance from that firm in the present proceedings, such as representation at depositions. (*See, e.g.,* Bounds Depo. II, pp. 4, 13, Ex. 4). Given such legal assistance in this matter, Bounds' should be expected to comply with the procedural rules governing motions to this Court.

condition is absolutely irrelevant to the question as to whether this Court's prior judgment should stand, Bounds' request for relief from that judgment should be denied.

In this regard, Embrex notes that a final judgment may only be set aside in exceptional circumstances such as fraud, misrepresentation, mistake, or newly discovered evidence, or where the judgment has been satisfied or rendered void.[3] *See* Fed. R. Civ. P. 60(b). Moreover, "[b]efore a party may seek relief under [any section of] Rule 60(b), a party must first show 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party and exceptional circumstances.'" *Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) *quoting Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984); *see also, Coomer v. Coomer*, 2000 U.S. App. LEXIS 17493, *10-*12 (4th Cir. 2000), (unpublished – copy attached as Ex. 5). As Bounds has failed to establish that any of these necessary predicates to a Rule 60(b) motion exist in this case, Bounds' request that this Court revoke the judgments ordering payment of Embrex's attorneys fees should be denied.

Bounds request should also be rejected, as Bounds has failed to identify any of the circumstances set forth in Rule 60(b) or the case law interpreting that rule under which relief from judgment may be obtained. In fact, Bounds has failed to identify any "exceptional circumstances" in this case or that the underlying judgment is unjust, which is necessary before relief may even be considered under Rule 60(b). *See, e.g., Coomer*, 2000 U.S. App. LEXIS 17493 at *11; *Smart Unique Servs. Corp. v. Mortgage Correspondence*, 158 F.R.D. 114, 116 (N.D. Ill. 1994) (stating"[t]o obtain relief under Rule 60(b), the [movant] must demonstrate that 'exceptional circumstances create a substantial danger that the underlying judgment . . . is

---

[2] In contrast to Bounds' assertion, the jury, this Court, and the Federal Circuit each found that there was **clear and convincing evidence** that defendants had willfully infringed the '630 patent.
[3] Bounds cannot seek relief under subdivisions (1), (2) or (3) of Rule 60(b), as motions under those subdivisions must be brought within one year of the judgment at issue. *See* Rule 60(b).

unjust'"). In any event, the only thing that is "unjust" in the present case is the fact that Embrex was forced to incur over $1,400,000.00 in attorneys fees in bringing two separate patent infringement actions against Bounds, which, given Bounds' demonstrated ability to secret assets and otherwise avoid Embrex's execution efforts, Embrex will, for the most part, likely never recover. By way of example, to frustrate Embrex's collection efforts, Bounds had a $20,000.00 payment to SEC wired to his **wife's** bank account, from which it was ultimately dispersed to Bounds' attorneys. (Bounds Depo. I, pp. 104-106, Ex. 1). Bounds and his attorney likewise attempted to mislead Embrex into not executing on land owned in part by Bounds by indicating that the tax valuation of the land ($36,000) was reasonably accurate, even though Embrex later learned the land was on the market, with Bounds' wife as the listing real estate agent, for **$1,600,000.00**. (Bounds Depo. I, pp. 19, 21-22, Ex. 1; Listing, Ex. 2). Thus, as the only "exceptional" circumstances and injustices here relate to Bounds efforts to avoid the judgment of this Court, it is clear that Bounds' request for relief from that judgment should be denied.

## C.    Bounds' Request that this Court Set Damages Should Be Rejected

In his letter, Bounds has also requested that this Court <u>set</u> the damages in this case at eighty-four cents. This case was remanded by the Federal Circuit for the sole purpose of determining the reasonable royalty damages to which Embrex is entitled in light of Bounds' adjudicated infringement of the '630 patent. Such "reasonable royalty" damages are meant to reflect the type and amount of payment that the patentee and infringer would have agreed to at the time of the infringement for a license to the patent. As noted by the Federal Circuit in its remand Order, the reasonable royalty might be viewed as the "flat fees or milestone payments" that Bounds would have been willing to make as Bounds was seeking a "pre-commercialization license." (Opinion, p. 10, Ex. 3). Thus, in this case, the reasonable royalty is determined based

on evidence as to the amount of royalties Embrex would have demanded, and Bounds would have been willing to pay, for a license to the '630 patent that would have allowed Bounds to develop and sell his *in ovo* injection machines without patent infringement liability. Bounds, however, has failed to present **any** evidence at all regarding the reasonable royalty Embrex and Bounds would have agreed to in such a hypothetical negotiation. Consequently, Bounds' request should be denied.

In any event, as demonstrated in the Expert Report of Michael Rowlad attached hereto, the evidence is clear that had Embrex and Bounds actually attempted to negotiate a sub-license to the '630 patent in 1996, Embrex would have demanded, and Bounds would have been willing to pay, an up-front license fee well in excess of $1,000,000.00 for a license to the '630 patent, along with running royalty payments. The analysis set forth in Mr. Rowland's report is based primarily on SEC's own business plans and projected revenues, and shows that SEC could have made such payments and still been very profitable had Embrex been willing to allow SEC entry to the market Embrex had built for *in ovo* injection machines. In contrast, Bounds' "analysis" assumes that Embrex would have been willing to let Bounds into the *in ovo* injection market for less than $1.00, a position which is belied by the fact that Embrex spent over $40,000,000.00 in creating the *in ovo* injection market and over $1,400,000.00 in legal fees to ensure that Bounds was not allowed to practice the patented methods of the '630 patent. As such, Embrex respectfully submits that Bounds has not and cannot show that damages should be set, as a matter of law, to less than $1.00 in this case.

## III.  CONCLUSION

For the foregoing reasons, the "requests" set forth in the letter of January 20, 2001 from Bounds to this Court should be rejected, and the present case should proceed for resolution of the reasonable royalty issue remanded by the Federal Circuit.

Respectfully submitted this the 6th day of February, 2001.

James D. Myers, Esq. (N.C. State Bar # 6305)
D. Randal Ayers, Esq. (N.C. State Bar # 20,830)
Richard P. Vitek, Esq.
Myers Bigel Sibley & Sajovec, PA
P.O. Box 37428
Raleigh, North Carolina  27627
(919) 854-1400

Attorneys for Plaintiff, Embrex, Inc.

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I have caused to be served a copy of *EMBREX'S RESPONSE TO MOTION BY EDWARD G. BOUNDS, JR. TO STRIKE AWARD OF ATTORNEYS FEES AND TO ASSESS ROYALTY PAYMENTS* upon Defendants via U.S. First Class Mail, postage prepaid, and via Federal Express, as follows:

> Edward G. Bounds, Jr. and
> Service Engineering Corp.
> c/o Edward Bounds
> 1707 Timberlake Drive
> Salisbury, Maryland 21801

This 6th day of February, 2001.



# IN THE CIRCUIT COURT
## FOR WICOMICO COUNTY, MARYLAND

EMBREX, INC.,

       Plaintiff

vs.                  Case No. 22C98001316FJ

SERVICE ENGINEERING CORP.
AND EDWARD G. BOUNDS, JR.,

       Defendants

_____/

## DEPOSITION

### of

### EDWARD G. BOUNDS, JR.

     **DATE:** Monday, October 26, 1998

     **TIME:** 10:00 a.m.

     **PLACE:** Webb, Burnett, Jackson, Cornbrooks,
             Wilber, Vorhis & Douse
             115 Broad Street
             Salisbury, Maryland 21803

Court Reporter:  Anne Marie Widdowson, A.A., C.R.

1    Q    Mr. Bounds, to the best of your knowledge

2  what's the approximate value, not just your interest,

3  but of the -- the three lots together, the entire

4  interest on them, what's your understanding of the

5  value of that 21 acres?

6    A    I have no idea, absolutely none.

7    Q    The tax records show those three lots as --

8  showing the tax valuation as 14,650 for two of the

9  lots, and let's see if I can -- those are for the two

10  small lots, and $7,430 for the larger lot.

11    I guess the first question is, would you

12  have any understanding why the very small lots would

13  be valued so much more than the large -- large tract?

14    A    It doesn't look proper to me.  I don't

15  know, but I -- I don't -- the answer is, I don't

16  know.

17    MR. HEARNE:  I think -- from knowing the

18  local market, I'd say one of the reasons is because

19  it's a built lot.

20    MR. AYERS:  Okay.  The two smaller lots --

21    MR. HEARNE:  The two small lots, yeah.

1    Q    And do you have any understanding who owns

2  the other five-sixth interest?

3    A    My attorney owns one-third, I believe.

4         MR. HEARNE:  I'm a trustee of my father's

5  trust that has a one-third interest.

6    Q    And?

7    A    Maureen's sister owns one-third, and my

8  sister owns one-third.

9         MR. HEARNE:  One-sixth.

10         THE WITNESS:  One-sixth.

11         BY MR. AYERS:

12    Q    Do you know if appraisals have ever been

13  done on this land?

14    A    I don't know.

15    Q    Do you have any understanding regarding the

16  per acre sales price for comparable lots in this

17  area?

18    A    No.

19         MR. HEARNE:  It's -- I will tell you that

20  for tax assessment purposes, they -- that they use

21  the comparable sale price in order -- at setting tax

1    assessments.  So if they -- they go out -- the

2    assessors for the state go out and have to come up

3    with comparable sales in order to set the tax

4    assessments.

5             MR. AYERS:  We can go off the record.

6             (Discussion off the record.)

7             BY MR. AYERS:

8        Q    Okay.  Regarding -- this is all a little

9    confusing.  But regarding the Eastgate Trio

10   partnership, Mr. Bounds, do you have any

11   understanding as to whether the Eastgate Trio

12   partnership's interest in this property has ever been

13   recorded in the land records office?

14       A    I don't know.

15            MR. HEARNE:  No, it has not.

16       Q    What documents are you aware of regarding

17   the Eastgate Trio partnership, having anything to do

18   with it?

19       A    What do you mean by "documents"?

20       Q    The partnership agreement, tax records and

21   so forth.

1    agreement, again, I think, was based on that July 1st

2    agreement we looked at earlier, the underlining

3    security agreement.  Has anything that would have

4    been covered by this security agreement been conveyed

5    by Service Engineering Corporation since July 1,

6    1998?

7        A      Conveyed to whom?

8        Q      Sold, transferred, given?

9        A      No.

10       Q      I believe during the North Carolina

11   litigation that you or someone else testified at

12   trial that an in ovo injection machine had been sent

13   to Brazil; is that correct?

14       A      That is correct.

15       Q      When was that machine sent to Brazil?

16       A      Just prior to the start of the trial.  That

17   was the 13th of July, so it was crated and shipped

18   within a week prior to that.

19       Q      And who received it in Brazil?

20       A      David Smith of Wings, L.T.D.A.

21       Q      And what were the terms of that machine

1 being sent to Smith in Wings?

2 　　A　　As a promotion for our presence in South

3 America.

4 　　Q　　Okay.  Who currently owns -- well, where is

5 this machine currently located?

6 　　A　　I don't know.  I really don't.

7 　　Q　　Who is currently in custody of the machine?

8 　　A　　Wings.  My, it's hot in here.  My sinuses

9 are going to start acting here.

10 　　　　　(Discussion off the record.)

11 　　　　　BY MR. AYERS:

12 　　Q　　Has Mr. Smith or Wings or anyone associated

13 with Wings provided you or Service Engineering

14 Corporation any payments for this machine?

15 　　A　　Not as a payment for selling it.  They made

16 a complimentary payment to get the machine in Brazil

17 for demonstrations.

18 　　Q　　And what was that payment?

19 　　A　　Twenty thousand dollars.

20 　　Q　　And was that paid prior to you sending the

21 machine to Brazil?

1      A      No.

2      Q      When was that paid?

3      A      Within the last few weeks.

4      Q      And what has happened to that $20,000?

5      A      It was sent to Steptoe & Johnson in

6  preparation for a rather complicated and lengthy

7  appeal of the Raleigh decisions.

8      Q      Was it sent directly from Wings to Steptoe?

9      A      No.

10     Q      Okay.  And how -- how did it transpire?

11     A      It was wire-transferred from a U.S. account

12 of Wings to my wife's account, personal bank account,

13 and my wife wrote a check and sent it from her

14 personal -- the same personal account to Steptoe &

15 Johnson.

16     Q      The $20,000, I believe you characterized

17 that as a complimentary payment.  What are the terms

18 of that?  Was that $20,000 that they're giving you

19 basically as a lease on the machine so that they can

20 show it for some period of time, or what's the

21 understanding?

**Prepared By: JOHN M MCCLELLAN**
**Phone: 410-548-3211**



**Price:$1,600,000   Type: Land -            Withdra**
**Address:0 US ROUTE 50 HWY**
                **SALISBURY, MD  21801**
**Subdiv:**

**Lot Size:**
**MLS # 304090**

## DESCRIPTION

**Site**
Lot Acres: 2.00
Cleared Acreage: 23.00 +/-
Wooded Acreage: 0.57 +/-
Lot Desc: Corner, Cleared
Lot Type: Commercial/Industrial
Road Frontage: 253 +/-
Public Maintained Road: Yes
Federal Flood Insurance Available: No

**Building Restrictions**
Setbacks:
Building Minimum Sq Footage:

## UTILITIES

**Sewer/Septic**
Central Sewer: Available
On-Site Septic: Other (See Remarks)

**Water**
Water Available: Lateral Not Installed/Must
Tap Off Main

## OTHER

**Financial (Annual)**
County Tax: 300

**Condo/Community Amenities**

**Disclosures/Restrictions**
Deed or Covenant

**Financing**
Conventional

**Withdrawn Data**
Withdrawn Date: 03/19/1997
Days On Mkt: 0

**Remarks:** OWNER WILL SUBDIVIDE, ZONED REGIONAL COMMERCIAL.  HIGHLY VISIBLE
AT CROSSROADS OF MAJOR U.S. ROUTES.  INCLUDE LOTS 18 & 19  L/F
1004/343

| Show Instructions: | Look Box: |
|---|---|
| Sell Fee: 4.0% | Buyer Fee: 4.0% |
| Sell Bon: | Buyer Bon: |
| List Agent: MAUREEN M BOUNDS | |
| List Brok: COOPER-STEWART | |
| Phone: 410-543-4548 | |

**Tax Data:** County: 23    District: 5    Acct#: 59650    Unit:         Block:         Lot: 0000
          Map: 110    Grid: 0    Parcel: 2577    Area:  2    Office#: 7889
          Owner: BOUNDS, EDWARD G                    Libr/Fol: 1412/851

Elementary:                    Junior/Middle:              High:

All room dimensions and other measurements are approximate. All information is deemed reliable but not guaranteed. Prospective purchasers should verify the information to their own satisfaction.
  * = Leasehold                                                    12/07/1998 03:54:22

# United States Court of Appeals for the Federal Circuit

99-1064

EMBREX, INC.,

Plaintiff-Appellee,

v.

SERVICE ENGINEERING CORP. and EDWARD G. BOUNDS, JR.,

Defendants-Appellants.

 

    James D. Myers, Myers, Bigel, Sibley & Sajovec, P.A., of Raleigh, North Carolina, argued for plaintiff-appellee. With him on the brief were Robert W. Glatz and D. Randal Ayers.

    Harvey B. Jacobson, Jr. and Michael R. Slobasky, Jacobson, Price, Holman & Stern, PLLC, of Washington, DC, argued for defendants-appellants.

Appealed from: U.S. District Court for the Eastern District of North Carolina

Senior Judge W. Earl Britt

Patent Act entitles a patentee to damages sufficient to compensate for infringement, but in no event less than a reasonable royalty for the actual infringing use of the patented process. See 35 U.S.C. § 284 (1994). With proper proof, lost profits damages can properly compensate for the patentee's losses. See Trell v. Marlee Elecs. Corp., 912 F.2d 1443, 1445, 16 USPQ2d 1059, 1061 (Fed. Cir. 1990).

In this case, the district court found that Embrex lost money on several potential sales and found that $500,000 was sufficient to compensate for those lost sales. However, as discussed above, because the sale of devices that may be used to practice a patented method cannot infringe without proof of direct infringement, SEC's offers to sell its machines cannot supply adequate evidentiary support for a compensatory damage award.

Because the only congnizable infringement in this case is the testing and those tests were not shown to cause any loss of profits to Embrex, this court vacates the district court's award of $500,000 in direct damages. However, under 35 U.S.C. § 284, Embrex "in no event" loses entitlement to a reasonable royalty for SEC's infringing tests. Royalties are ordinarily computed based upon the sales of a patented product or process. However, parties may choose other methods to compute the amount that a licensee may pay for the right to use a patented product or process, such as flat fees or milestone payments in the case of pre-commercialization licenses. In this case, the record does not supply sufficient evidence to compute a reasonable royalty as required by section 284. Therefore, this court vacates the award of $500,000 in direct damages and remands to the district court for determination of a reasonable royalty for SEC's infringing uses of the patented method.



IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

EMBREX, INC.

      Plaintiff

     vs.                    Civil Action No.
                             5:96-CV-824-BR(3)

SERVICE ENGINEERING CORP.
and EDWARD G. BOUNDS, JR.

      Defendants

\*    \*    \*    \*    \*    \*    \*    \*

VIDEOTAPED DEPOSITION

OF

EDWARD G. BOUNDS, JR.

DATE:  Friday, January 12, 2001

TIME:  9:14 a.m.

PLACE:  Laws & Laws, P.A.
        209 East Main Street
        Salisbury, Maryland  21801

PROTECTIVE ORDER

CONFIDENTIAL TRANSCRIPT

Reported by Leslie L. Schneider, Notary Public.

Schafer Reporting Company, P.O. Box 1140, Salisbury, MD. 21802 * Voice: 410-742-1440 * Fax: 410-742-0117

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2              -    -    -    -    -    -    -

 3          (Preamble and Introduction of Counsel.)

 4                   EDWARD G. BOUNDS, JR.,

 5          the Defendant herein, having been duly

 6     sworn, testified as follows:

 7          EXAMINATION BY COUNSEL FOR THE PLAINTIFF

 8               BY MR. VITEK:

 9          Q    Mr. Bounds, my name is Richard Vitek, I'm

10     here on behalf of Embrex to ask you some questions

11     relating to the matter in North Carolina.  I

12     understand you're represented here today by

13     Mr. Hearne, is that correct?

14          A    That is correct.

15               MR. VITEK:  And Mr. Hearne, I take it

16     you're not going to be filing a Notice of Appearance

17     in North Carolina, you're just representing him

18     personally here today?

19               MR. HEARNE:  As of right now, I don't

20     have any intention of doing that.

21               BY MR. VITEK:
```

1  MR. VITEK: And have you been counseling

2  him in the North Carolina action?

3  MR. HEARNE: I have been counseling him

4  in his legal affairs as they affect him in the State

5  of Maryland. Of course that's an improper question,

6  asking me what I'm doing as far as counseling my

7  client in the State of Maryland, but you've gotten

8  an answer anyway.

9  BY MR. VITEK:

10  Q  Are you taking your attorney's advice not

11  to answer?

12  A  I certainly will.

13  Q  Has Chick Express received any payments

14  as a result of your activities?

15  A  I don't run the company. You would have

16  to ask one of the two owners.

17  Q  Other than -- strike that.

18  I take it you designed the Chick Express?

19  A  I testified to that earlier.

20  Q  And other than designing the Chick

21  Express, have you done any other work for the



LEXSEE 2000 us app lexis 17493

**JUDY COOMER, Plaintiff-Appellee, v. MICHAEL COOMER, Defendant-Appellant.**

No. 98-2236

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*2000 U.S. App. LEXIS 17493*

**November 30, 1999, Argued**

**July 20, 2000, Decided**

**NOTICE:**
[*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**
Reported in Table Case Format at: *2000 U.S. App. LEXIS 21598.*

**PRIOR HISTORY:**
Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Glen M. Williams, Senior District Judge. (CA-96-209).

**DISPOSITION:**
AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant ex-husband appealed from judgment of the United States District Court for the Western District of Virginia, at Abingdon, which denied his motion to alter, amend, or vacate the grant of summary judgment in favor of appellee ex-wife's claim that appellant breached a marital separation agreement.

**OVERVIEW:** Appellee ex-wife filed a federal diversity action against appellant ex-husband, claiming that appellant breached a marital separation agreement. Other than answering the complaint, appellant failed to respond to appellee's motion for summary judgment. After considering the merits of the matter, the district court granted summary judgment in favor of appellee and entered judgment against appellant. Upon receiving notice of the judgment against him, appellant moved to alter, amend, or vacate the grant of summary judgment. The district court denied appellant's motion, and he appealed. Upon review, judgment was affirmed. Appellant could not establish the four threshold requirements, thereby closing the gateway to potential relief from judgment pursuant to Fed. R. Civ. P. 60(b). Even if the four predicate requirements were met, appellant's motion for relief still failed because his case did not fit within any of the six itemized grounds for relief from judgment enumerated in Rule 60(b).

**OUTCOME:** Judgment affirmed. Appellant ex-husband could not establish the four threshold requirements, thereby closing the gateway to potential relief from judgment. Even if the four predicate requirements were met, appellant's motion for relief still failed because his case did not fit within any of the six itemized grounds for relief from judgment.

**CORE CONCEPTS**

*Civil Procedure : Relief From Judgment*
*Civil Procedure : Appeals : Standards of Review : Abuse of Discretion*
Motions under Fed. R. Civ. P. 60(b) are vested in the sound discretion of the trial court and should not be disturbed by an appellate court absent a showing that the trial court abused its discretion. When the movant seeks relief from a default judgment, however, appellate courts apply the "abuse of discretion" standard of review somewhat less deferentially.

*Civil Procedure : Relief From Judgment*

Fed. R. Civ. P. 60(b) provides several reasons why a court may relieve a party from a final judgment, order or proceeding.

*Civil Procedure : Relief From Judgment*

See Fed. R. Civ. P. 60(b).

*Civil Procedure : Relief From Judgment*

Under jurisprudence of the United States Court of Appeals for the Fourth Circuit, a movant seeking relief under Fed. R. Civ. P. 60(b) must first make four threshold showings before the court will even consider the six itemized grounds of relief. The four threshold showings are: (1) timeliness; (2) a meritorious defense; (3) a lack of unfair prejudice to the opposing party; and (4) exceptional circumstances. District courts must rigorously examine these four predicate requirements because the appellate court has characterized Rule 60(b) relief as "extraordinary" and to be used only in "exceptional circumstances." In the unlikely event the moving party can clear this onerous four-part threshold, he must then satisfy one of the six enumerated factors set forth in Rule 60(b).

*Civil Procedure : Relief From Judgment*

Fed. R. Civ. P. 60(b) relief is only appropriate under the "meritorious defense" threshold analysis when there is a real possibility the outcome might be different after re-litigation.

*Civil Procedure : Relief From Judgment : Mistake or Excusable Neglect*

In determining whether the movant's neglect was excusable, the court considers whether the movant was at fault. When the movant is at fault, the judicial system's interest in finality and efficiency presumptively prevails. To overcome this presumption, the movant must adequately defend his conduct in order to show that his neglect was truly excusable.

*Civil Procedure : Relief From Judgment : Extraordinary Circumstances*

The sixth criterion, Fed. R. Civ. P. 60(b)(6), is a catch-all provision giving the court broad equitable power to grant relief from judgments "for any other reason." This clause, however, is generally invoked only in "extraordinary circumstances."

*Civil Procedure : Relief From Judgment : Void Judgments*

A judgment is void only if the court that renders the judgment lacks subject matter jurisdiction, personal jurisdiction, or the judgment is inconsistent with due process requirements.

*Civil Procedure : Relief From Judgment*

The remedy provided by Fed. R. Civ. P. 60(b) is extraordinary. In determining whether to exercise the power to relieve against a judgment under Rule 60(b), the courts must engage in the delicate balancing of the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts.

**COUNSEL:**

ARGUED: Mark S. Dessauer, HUNTER, SMITH & DAVIS, Kingsport, Tennessee, for Appellant.

Robert Tayloe Copeland, COPELAND, MOLINARY & BIEGER, P.C., Abingdon, Virginia, for Appellee.

**JUDGES:**

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

**OPINION:**

PER CURIAM:

Plaintiff-Appellee, Judy Coomer, filed a federal diversity action against Defendant-Appellant, Michael Coomer, on December 24, 1996, in the United States District Court for the Western District of Virginia (Abingdon Division). Mrs. Coomer alleged that Mr. Coomer breached a marital separation agreement formed in 1992. On April 8, 1998, the district court granted Mrs. Coomer's motion for summary judgment. Subsequently, on April 22, 1998, Mr. Coomer filed a motion to alter, amend, or vacate the district court's grant of summary judgment. The district court denied Mr. Coomer's motion. For [*2] the reasons discussed below, we affirm.

I.

When Mrs. Coomer filed her Complaint in December of 1996, Mr. Coomer filed an Answer and initially attempted to have the case dismissed on jurisdictional grounds. When this proved unsuccessful, Mr. Coomer stopped communicating with his counsel, David J. Hutton. As a result, Mr. Hutton moved to withdraw as counsel of record on October 6, 1997. A copy of the motion was forwarded to Mr. Coomer at 124 Viewbend, Johnson City, Tennessee 37601. On October 7, 1997, the district court granted Hutton's motion to withdraw and ordered Mr. Coomer to inform the court within thirty days whether he intended to proceed pro se or retain the services of another attorney. The court mailed a copy of the order to Mr. Coomer's Johnson City address.

Several months elapsed with no response from Mr. Coomer. On February 19, 1998, with the court still awaiting Mr. Coomer's response, Mrs. Coomer filed a motion for summary judgment. In support of her motion, Mrs. Coomer submitted a sworn affidavit outlining the two ways in which Mr. Coomer breached the marital separation agreement. A copy of the summary judgment motion was mailed to Mr. Coomer's last known residence [*3] in Johnson City. Also on February 19, 1998, the court entered an order instructing Mr. Coomer to respond to the motion within twenty days. The order, which advised Mr. Coomer that failure to respond to the order could result in a final judgment against him, was again mailed to Mr. Coomer's address in Johnson City.

The deadline for Mr. Coomer's response passed without any reply. Consequently, the court proceeded to address the merits of Mrs. Coomer's summary judgment motion. After reviewing the terms of the separation agreement and Mrs. Coomer's sworn affidavit, the court determined that Mr. Coomer failed to meet his obligations as outlined in the separation agreement. Therefore, the court granted Mrs. Coomer's motion for summary judgment on April 8, 1998, and awarded her $ 113,740.66. The court mailed a copy of the judgment to Mr. Coomer's Johnson City address.

Unlike the previous court documents, which Mr. Coomer disavows receiving, Mr. Coomer acknowledged receipt of the April 8 judgment. Immediately thereafter, on April 22, 1998, Mr. Coomer filed a notice of appearance announcing that he had retained the law firm of Hunter, Smith & Davis as his legal counsel. On that same date, [*4] Mr. Coomer filed a motion pursuant to Fed. R. Civ. P. 52(b), 59(e) and 60(b) requesting that the district court alter, amend or vacate its April 8, 1998 order granting summary judgment in favor of Mrs. Coomer.

In support of his motion, Mr. Coomer alleged that he was not informed that his former counsel, Mr. Hutton, had moved to withdraw from the case or that he had been granted permission to do so by the court. Mr. Coomer further alleged that he was not aware that Mrs. Coomer had filed a motion for summary judgment or that the motion was under advisement by the court. Given this alleged lack of notice, Mr. Coomer argued that he was not afforded the opportunity to respond to the motion that ultimately resulted in a judgment against him. He argued that the case should be resolved on the merits after both sides had a full and fair opportunity to address the disputed issues.

Upon receipt of Mr. Coomer's motion, the district court contacted Mrs. Coomer's counsel and asked whether Mrs. Coomer opposed the motion. Mrs. Coomer stated her strong opposition, leading the district court to

schedule a motion hearing for June 23, 1998. On June 22, 1998, Mrs. Coomer filed a memorandum detailing [*5] her disagreement with Mr. Coomer's motion. The district court evaluated the written pleadings as well as the evidence presented at the hearing. In addition to arguments from counsel, a postal clerk from Johnson City, Tennessee (Nathaniel Harris) testified at the hearing. Mr. Coomer did not attend the hearing, despite having full notice of the proceeding. n1

n1 Mr. Coomer argues that he did not attend the hearing because he did not think evidence would be received during the proceeding. Had he known it was an evidentiary hearing, Mr. Coomer claims he would have been present. Mr. Coomer, however, had notice of the hearing six weeks before it occurred. The notice of hearing clearly indicated that the hearing's purpose was to evaluate Mr. Coomer's own motion. Because presentation of evidence is an elemental aspect of judicial hearings, we find Mr. Coomer's argument unavailing.

Subsequent to the hearing, the district court filed a Memorandum Opinion and entered an order denying Mr. Coomer's motion on July 23, 1998. On [*6] August 18, 1998, Mr. Coomer filed a notice of appeal to this court.

II.

Mr. Coomer appeals the district court's disposition in its entirety. In his brief and at oral argument, however, Mr. Coomer rested his motion to alter, amend, or vacate the district court's summary judgment order solely on Rule 60(b), effectively abandoning his earlier reliance on Rules 52 and 59. Accordingly, we will confine our discussion to Rule 60(b), treating it as the only colorable basis for the relief Mr. Coomer requests.

Mr. Coomer developed the following facts in support of his Rule 60(b) motion in a sworn affidavit filed on April 22, 1998. At the time Mrs. Coomer filed her lawsuit in December of 1996, Mr. Coomer alleges that he resided at 124 Viewbend Road, Johnson City, Tennessee. He alleges that he remained at this address until April of 1997, at which time he moved to his current address at 2716 Berkshire Lane, Kingsport, Tennessee 37660. Mr. Coomer also alleges that at the time of his move to Kingsport, either he or his wife (Mrs. Coomer) filed a change of address form at the Johnson City post office requesting that Mr. Coomer's mail be forwarded to his new address in Kingsport.

In his affidavit, [*7] Mr. Coomer also alleges that his last contact with his original counsel, Mr. Hutton,

was in February 1997. Mr. Coomer maintains that he was never aware of Mr. Hutton's motion to withdraw as counsel. Mr. Coomer also states that he never received notice of Mrs. Coomer's motion for summary judgment. The only court document Mr. Coomer acknowledges receiving after February 1997 was the April 8, 1998 order granting judgment against him in the amount of $ 113,740.66.

Several key facts, however, belie Mr. Coomer's suggestion that he never received notice of the ongoing legal proceedings against him. The district court dutifully kept Mr. Coomer abreast of the status of this litigation, including Mr. Hutton's motion to withdraw, the court order permitting Mr. Hutton's withdrawal, and two subsequent orders instructing Mr. Coomer to reply to the court. All these notices were sent to Mr. Coomer's Johnson City address, and none were returned to the court by the postal service.

Indeed, the only document the post office ever returned was a copy of the April 8, 1998 order and memorandum opinion granting Mrs. Coomer's motion for summary judgment. Like the preceding notices, the April 1998 court documents [*8] were sent to Mr. Coomer's Johnson City address. When the post office returned the April 8, 1998 documents to the district court, however, there was a sticker appended to the return stating that the one-year mail forwarding period for the Johnson City address had expired and that Mr. Coomer's new address was in Kingsport. n2

n2 The court then re-mailed the April 8 order to Mr. Coomer's Kingsport address, where Mr. Coomer acknowledges receiving it.

Thus, from at least April of 1997 until April of 1998, all mail sent to Mr. Coomer's Johnson City address was being forwarded to his new Kingsport address. Significantly, the court documents Mr. Coomer claims he never received were all sent to him when the mail forwarding period was in effect. The fact that these documents were never returned to the court by the post office raises an inference that the documents were in fact forwarded to Mr. Coomer's new Kingsport address, despite Mr. Coomer's claims to the contrary.

Seizing on this chain of inferences, Mrs. Coomer [*9] argues that Mr. Coomer's failure to respond to the court documents has more to do with Mr. Coomer's evasiveness than with genuine lack of notice. Mr. Coomer's Rule 60(b) motion, in Mrs. Coomer's view, is simply an disingenuous effort to place blame on the court and the postal service for failing to keep him abreast of the status of the litigation.

III.

A. Standard of Review

Motions under Rule 60(b) are vested in the sound discretion of the trial court and should not be disturbed by an appellate court absent a showing that the trial court abused its discretion. See *National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993)*. When the movant seeks relief from a default judgment, however, appellate courts apply the "abuse of discretion" standard of review somewhat less deferentially. See id.

While the instant case superficially resembles a default judgment (in that judgment against Mr. Coomer flowed from his failure to respond to Mrs. Coomer's motion for summary judgment), the district court granted summary judgment for Mrs. Coomer only after considering the merits of Mrs. Coomer's lawsuit. This distinguishes the instant case from the usual [*10] default judgment scenario, where the outcome follows solely from a procedural default, independent of the underlying merits of the claim. The cases modifying the "abuse of discretion" standard of review in the context of default judgments are therefore inapposite. An undiluted application of the "abuse of discretion" standard accordingly forms the appropriate framework for appellate review.

B. Controlling Legal Principles

Rule 60(b) states that a court may relieve a party from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged;

(6) any other reason justifying relief from the operation of the judgment (the "catch-all" equitable provision).

Under Fourth Circuit jurisprudence, a movant seeking relief under Rule 60(b) must first make four threshold showings before the court will even consider the six itemized grounds of relief enumerated above. The four threshold showings are: (1) timeliness [*11] (i.e., the request for relief must be filed no later than one year after the date of the order from which the movant seeks relief); (2) a meritorious defense (i.e., the moving party

must show that, if relieved from the order and given another chance to litigate the underlying issues, he will have meritorious arguments to deflect the opposing party's claims); (3) a lack of unfair prejudice to the opposing party; and (4) exceptional circumstances. See *Dowell v. State Fire & Cas. Auto Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993)*. District courts must rigorously examine these four predicate requirements because we have characterized Rule 60(b) relief as "extraordinary" and to be used only in "exceptional circumstances." See *Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979)*. In the unlikely event the moving party can clear this onerous four-part threshold, he must then satisfy one of the six enumerated factors set forth in Rule 60(b). See *Dowell, 993 F.2d at 48.*

The district court held that Mr. Coomer could not establish the four threshold requirements, thereby closing the gateway to potential Rule 60(b) relief. [*12] Even if the four predicate requirements were met, the court held that Mr. Coomer's motion for relief would still fail because his case did not fit within any of the six itemized grounds in Rule 60(b). We agree with the district court.

C. Mr. Coomer Can Not Make the Four Threshold Showings

While Mr. Coomer met the "timeliness" prong of the four-part threshold analysis (prong 1), he failed to offer a "meritorious defense" (prong 2) and he failed to state "exceptional circumstances" (prong 4) justifying the extraordinary remedy afforded by Rule 60(b).

First, Mr. Coomer has not offered a "meritorious defense" to the allegations contained in Mrs. Coomer's summary judgment motion. Nowhere in the affidavit underlying his Rule 60(b) motion did Mr. Coomer make a credible argument contesting the district court's finding that, as a matter of law, he violated his obligations under the separation agreement.

While he did not directly state a defense in his affidavit, Mr. Coomer argues that the affidavit contained oblique references to his "Answer" to Mrs. Coomer's original complaint; and in his Answer, Mr. Coomer stated the affirmative defenses of failure of consideration, fraud in the inducement, [*13] estoppel, and set-off. Additionally, Mr. Coomer argues that his new counsel stated a defense of "inaccurate calculation of monies owed Mrs. Coomer" at the June 23, 1998 hearing on Mr. Coomer's Rule 60(b) motion.

The district court, however, had Mr. Coomer's "Answer" (and its accompanying affirmative defenses) in hand when it granted Mrs. Coomer's summary judgment motion and found Mr. Coomer in violation of the separation agreement. It is therefore unlikely that those preexisting defenses would change the outcome of the litigation were Mr. Coomer to receive a second bite at the apple under Rule 60(b). See *Augusta Fiberglass v. Fodor Contracting, 843 F.2d 808, 812 (4th Cir. 1988)* (holding that Rule 60(b) relief is only appropriate under the "meritorious defense" threshold analysis when there is a real possibility the outcome might be different after re-litigation). Thus, in order for Mr. Coomer to get a second bite at the apple under Rule 60(b), he needed to state additional, more compelling defenses in the affidavit supporting his Rule 60(b) motion. Yet he failed to do so, falling back on earlier defenses that the district court had already found unpersuasive. We therefore [*14] conclude that the district court did not abuse its discretion by finding that Mr. Coomer's affidavit failed to state a "meritorious defense."

Second, Mr. Coomer has failed to establish the existence of "exceptional circumstances." If anything, the facts reveal that Mr. Coomer's failure to respond to the court's orders and notices was probably a deliberate attempt to delay the proceedings against him, rather than a genuine case of exceptional hardship created by never receiving notice in the first instance. The district court did not abuse its discretion by so concluding.

D. Mr. Coomer Can Not Satisfy Any Of The Six Criteria Enumerated In Rule 60(b)

Even if Mr. Coomer could successfully meet all four threshold requirements, his motion for relief would still fail when evaluated under the six criteria enumerated in Rule 60(b). Mr. Coomer correctly notes that the categories under Rule 60(b) are "broadly phrased", with substantial overlap among the six itemized grounds. See *Compton, 608 F.2d at 102.* Mr. Coomer complicates the analysis, however, by failing to specify which of the six grounds he believes is most pertinent to his situation.

Faced with this ambiguity, [*15] the district court analyzed Mr. Coomer's motion under Rule 60's "excusable neglect" provision (the first of the six itemized criteria). In determining whether the movant's neglect was excusable, the court considers whether the movant was at fault. See *Home Port Rentals, Inc. v. Ruben , 957 F.2d 126, 132 (4th Cir. 1992)*. When the movant is at fault, the judicial system's interest in finality and efficiency presumptively prevails. To overcome this presumption, the movant must adequately defend his conduct in order to show that his neglect was truly excusable. See *Heyman v. M.L. Marketing Co., 116 F.3d 91, 94 (4th Cir. 1997)* (quoting *Augusta Fiberglass, 843 F.2d at 811)*.

Mr. Coomer argues that his neglect of the court orders was excusable because he never received them. The district court did not abuse its discretion when it found this argument unpersuasive. Three orders were forwarded to Mr. Coomer's Johnson City address

between October 1997 and April 1998. While Mr. Coomer was not living at the Johnson City address during this period, a one-year mail forwarding order was in effect, which would have routed all his Johnson City mail [*16] to his new Kingsport address. The allegedly missing court orders sent to Johnson City were never returned by the post office, raising a credible inference that Mr. Coomer received them through the mail forwarding system in Kingsport. As the district court noted (with a justifiable degree of cynicism), it is hardly coincidental that the only court order Mr. Coomer admits receiving was the April 8 order awarding judgment against him in the amount of $ 113,000. Had Mr. Coomer shown even the slightest diligence in the period between April of 1997 and April of 1998, when judgment was entered against him, this whole situation could have been avoided. Mr. Coomer's conduct was, at best, irresponsible and, at worst, deliberately evasive. In either event, he may not avail himself of the extraordinary remedy afforded by Rule 60(b) on an "excusable neglect" theory.

In his brief, Mr. Coomer argues that his Rule 60(b) motion should instead be evaluated under Rule 60(b)'s fourth criterion ("the judgment is void") or, alternatively, the sixth criterion. n3

> n3 The sixth criterion, codified as Rule 60(b)(6), is a catch-all provision giving the court broad equitable power to grant relief from judgments "for any other reason." This clause, however, is generally invoked only in "extraordinary circumstances." *In re A.H. Robins Co., 197 B.R. 488, 490 (E.D. Va. 1994)* (citing *Klapprott v. U.S. , 335 U.S. 601, 614-615, 93 L. Ed. 266, 69 S. Ct. 384 (1949))*. The instant case does not present the requisite "extraordinary circumstances" — or at least the district court did not abuse its discretion by so concluding.

[*17]

Mr. Coomer's argument that the summary judgment order against him is "void," thereby satisfying Rule 60(b)'s fourth criterion, has some superficial appeal. The argument, however, is ultimately unpersuasive. Even if the district court's grant of summary judgment was in error (a proposition we reject), a judgment is not "void," within the meaning of Rule 60(b), merely because it is erroneous. It is void only if the court that rendered the

judgment lacked subject matter jurisdiction, personal jurisdiction, or the judgment was inconsistent with due process requirements. See *New York Life Ins. Co. v. Brown, 84 F.3d 137, 143 (5th Cir. 1996)*. Mr. Coomer specifically argues that the granting of summary judgment against him was inconsistent with due process, given that he (allegedly) never received notice of Mrs. Coomer's motion for summary judgment and was never given an opportunity to respond.

The problem is that Mr. Coomer's story about never receiving notice of Mrs. Coomer's motion for summary judgment is not credible. Consequently, the district court did not abuse its discretion when it declined to consider Mr. Coomer's due process argument under Rule 60(b)'s "the judgment [*18] is void" criterion. Put differently, it was well within the bounds of reasonable discretion for the court to conclude (albeit tacitly) that the grant of summary judgment against Mr. Coomer comported with due process notice requirements.

IV.

Mr. Coomer is undoubtedly correct that our judicial system expresses a preference for having cases and motions resolved on the merits after both sides have a full and fair opportunity to develop the disputed issues. Rule 60(b), however, balances this preference for thorough adversarial adjudication against the judicial system's equally profound interest in finality and in encouraging diligence among litigants. As we held in Compton:

> The remedy provided by [Rule 60(b)] is extraordinary .... [And] in determining whether to exercise the power to relieve against a judgment under 60(b), the courts must engage in the delicate balancing of the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts.

*608 F.2d at 102.*

There are doubtless extraordinary cases where granting a party relief from a prior [*19] judgment is more important than vindicating the system's interest in finality. The district court, however, did not abuse its discretion when it concluded that Mr. Coomer failed to present such an extraordinary case.

AFFIRMED